CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 30, 2019

LETTER TO ALL COUNSEL

Re: *Dae'marin J. v. Commissioner of Social Security*,
Civil No. SAG-18-1666

Dear Counsel:

On June 6, 2018, Plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") denial of his claims for Children's Supplemental Security Income ("Children's SSI") and adult SSI. ECF 1. I have considered the parties' cross-motions for summary judgment, and Plaintiff's reply. ECF 16, 18, 21. This Court must uphold the SSA's decision if it is supported by substantial evidence and if proper legal standards were employed. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). I find that no hearing is necessary. *See* Local R. 105.6 (D. Md. 2018). I will grant the SSA's motion and deny Plaintiff's motion. This letter explains my rationale.

Plaintiff's mother filed an application for Children's SSI on his behalf on August 27, 2013, while Plaintiff was a minor. Tr. 295-303. The claim was denied initially and on reconsideration. Tr. 118-21, 130-31. An Administrative Law Judge ("ALJ") held a hearing on the claim on May 23, 2017, roughly five months after Plaintiff attained age 18. Tr. 39-97. Following the hearing, on June 21, 2017, the ALJ issued an opinion denying both Children's SSI and adult SSI benefits. Tr. 12-33. Because the Appeals Council denied Plaintiff's request for review, Tr. 1-5, the ALJ's decision is the final, reviewable decision of the SSA.

The ALJ first evaluated Plaintiff's claim using the three-step sequential process for claims involving Children's SSI, as set forth in 20 C.F.R. § 416.924. First, the ALJ determines whether the child has engaged in substantial gainful activity. 20 C.F.R. §§ 416.924(a), (b). If the child has not engaged in substantial gainful activity, the ALJ proceeds to step two and determines whether the child has a severe impairment or combination of impairments. §§ 416.924(a), (c). At step two "[i]f [the child] do[es] not have a medically determinable impairment, or [the] impairment(s) is a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations," then the ALJ will determine that the child is not disabled. § 416.924(c). However, if the ALJ determines that the child has a severe impairment or combination of impairments, then the ALJ proceeds to step three of the evaluation to determine whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.924(d).

A claimant meets a listing when he has "a medically determinable impairment(s) that satisfies all of the criteria of the listing. 20 C.F.R. § 416.925(d). An ALJ may determine that the

impairment(s) medically equals a listed impairment if: (1) there are other findings related to the child's impairment, not included in the listing requirements, that are at least of equal medical significance to the required criteria; (2) the child has an impairment not described in the listings with findings that are at least of equal medical significance as a closely analogous listed impairment; or (3) if the child has a combination of impairments, none of which meets a listing, but which result in findings that are at least of equal medical significance as a closely analogous listed impairment. § 416.926(b).

If an impairment(s) neither meets nor equals a listing, an ALJ may determine that the child's impairment(s) is functionally equivalent to a listed impairment. § 416.926a. The ALJ must evaluate the "whole child" when making a finding regarding functional equivalence. SSR 09–1p, 2009 WL 396031 (S.S.A. Feb. 17, 2009). Generally, the ALJ must first consider how the child functions daily in all settings, as compared to children of the same age who do not have the impairments. *Id.* at *2. In other words, the ALJ considers the child's activities including everything a child does at home, at school, and in the community on a daily basis. *Id.* Next, the ALJ must assess the child's capacity to perform or not perform activities, and must assign each activity to any or all of the six domains or broad areas of functioning. *Id.* at *3. The six domains are (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment functionally equals the listings if it is determined that a claimant has marked limitations in two domains, or an extreme limitation in one domain. § 416.926a(d).

The ALJ proceeded in accordance with applicable law at all three steps of the evaluation. The ALJ's findings at steps one and two favored Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to the application. Tr. 16. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "learning disorder with impairment in math, major depressive disorder, attention deficit hyperactivity disorder ("ADHD"), and personality disorder." Tr. 17. At step three, however, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any listing. Tr. 17-18. The ALJ specifically considered Listing 112.05 for intellectual disorders, Listing 112.04 for depressive, bipolar, and related disorders, Listing 112.08 for personality and impulse-control disorders, and Listing 112.11 for neurodevelopmental disorders, and expressly indicated the criteria she found to be absent. Tr. 17-18.

The ALJ then proceeded to determine whether Plaintiff's impairments functionally equaled the listings. The ALJ first evaluated the "whole child" in making findings regarding functional equivalence. In doing so, the ALJ reviewed the testimony of Plaintiff and his mother. Tr. 18-19. The ALJ also conducted a review of Plaintiff's limited medical records from the relevant time frame, consisting mostly of one-time (or, for one provider, two-time) consultative examinations. Tr. 19-21.

Finally, the ALJ assigned weight to the opinions of various educational and medical sources. The ALJ assigned "some weight" to the somewhat inconsistent questionnaires completed

by Plaintiff's teachers, crediting the overall reflection of "borderline intellectual functioning and poor academic performance." Tr. 22. The ALJ further assigned "partial weight" to the opinions rendered by two non-examining State agency consultants, because the ALJ believed Plaintiff to have greater limitations in the domain of acquiring and using information. Tr. 21. The ALJ assigned "little weight" to the opinions of a consultative examiner, Dr. Kenneth Fligsten, and "partial weight" to the opinion of another consultative examiner, Dr. Donald Davis. Tr. 21-22. The ALJ also reviewed the various GAF scores in the medical record. Tr. 22-23. Ultimately, the ALJ concluded that Plaintiff had: (i) marked limitation in acquiring and using information; (ii) less than marked limitation in attending and completing tasks; (iii) less than marked limitation in interacting and relating with others; (iv) no limitation in moving about and manipulating objects; (v) less than marked limitation in caring for himself; and (vi) no limitation in health and physical well-being. Tr. 23-28. Because Plaintiff did not have an impairment or combination of impairments resulting in either marked limitations in two domains or an extreme limitation in one domain, his impairments did not functionally equal the severity of any listed impairments.

The ALJ also analyzed Plaintiff's medical conditions under the adult standards for assessing disability because Plaintiff attained age 18 before the ALJ's decision. The ALJ found that, as an adult, Plaintiff retained the same severe impairments. Tr. 28. Despite those impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple, routine tasks (reasoning level 1), but not at a production rate pace. He can occasionally interact with supervisors, coworkers, and the public. Time off-task during the workday can be accommodated by normal breaks. The claimant can perform work involving few changes in the routine work setting and simple decisions.

Tr. 30. After considering testimony from a vocational expert ("VE"), the ALJ found that Plaintiff was capable of performing jobs existing in significant numbers in the national economy and, therefore, was not disabled. Tr. 31-32.

Plaintiff asserts three primary arguments in support of his appeal: (1) that the ALJ erred in evaluating his ability to interact and relate with others; (2) that the ALJ erred in assessing his ability to attend and complete tasks; and (3) that the ALJ provided inadequate discussion of his RFC assessment as to his claim after he attained the age of 18. Each argument lacks merit for the reasons addressed below.

First, Plaintiff contends that he should have been found to have a marked limitation in the functional domain of "interacting and relating with others." ECF 16-1 at 10-18. As noted above, in assessing a claimant's limitations, the ALJ is required to consider evidence of a claimant's interactions at home, at school, and in the community. *See* 20 C.F.R. § 416.926a(b). In this case, as the ALJ explained, the only significant evidence of aggressive or paranoid behavior came from the subjective reports from Plaintiff's mother. *See* Tr. 20 (noting that despite Plaintiff's mother's reports of anger management issues, "he was popular as 'the class clown,'" and was "quiet and

somewhat anxious and withdrawn" and "engaged in a polite manner" on examination); Tr. 20-21 (noting at another examination that Plaintiff "was well-groomed and displayed socially appropriate behavior" and "denied any angry/aggressive behavior and instead reported positive social interactions."); Tr. 21 (noting another examination at which "the claimant did not contribute a great deal during the interview, instead allowing his mother to do most of the talking," and "appeared sullen, inattentive, and withdrawn"). None of the examiners reported any displays of anger or aggression or paranoia. Tr. 21. Further, as the ALJ noted, "The claimant's teachers noted his quiet/reserved behavior and some difficulties with authority figures, but otherwise assessed few issues with peer-to-peer interaction."[1] Tr. 22. Finally, the ALJ noted Plaintiff's testimony that he has no current social issues and is able to control his anger and irritability, and found that he has had success for nine months in a full-time residential program. *Id.*

Per the evidence cited above, the ALJ's assignments of reduced weight to the opinions from the two consultative examiners, Drs. Davis and Fligsten, are supported by substantial evidence. As the ALJ described, at the sessions with both examiners, Plaintiff's mother did most of the talking and reported aggressive conduct at home, while Plaintiff was restrained, reserved, quiet, and withdrawn. Tr. 20, 21. Plaintiff's appearance and conduct at his consultative examinations comports more closely with the descriptions of his conduct from his teachers at school, than his mother's portrayal of his explosive conduct at home.[2] Moreover, Plaintiff's ability to live, without incident, in a full time residential program for nine months supports a less than marked impairment in the area of social interaction.

Plaintiff's second argument posits that the ALJ should have found Plaintiff to suffer from a marked limitation in the realm of "attending and completing tasks." ECF 16-1 at 18-21. Plaintiff supports that contention with several arguments. First, Plaintiff contends that because Job Corps is a "self-paced" program, it does not demonstrate his ability to attend and complete tasks in a timely fashion. ECF 16-1 at 19-20. Plaintiff's argument is unpersuasive. The letter in the record about the Job Corps program says it is "a self paced program that can take anywhere from one to two years to complete," which does not indicate that participants are afforded unreasonable or non-competitive amounts of time to complete individual work-related tasks, such as those needed for food handling or cashiering. Tr. 313. Instead, Plaintiff's ability to persevere with a full-time

---

[1] Plaintiff contends that the ALJ should have considered an incident in which Plaintiff apparently stabbed another student with a pencil as evidence of marked restriction in interacting with others. ECF 16-1 at 15. Plaintiff's current contention that that incident reflects serious difficulties with social interaction contradicts his own hearing testimony. He specifically testified that the incident with the pencil was an accident and he was just playing around. Tr. 68. The educational records do not reflect any significant discipline for the pencil incident, somewhat corroborating Plaintiff's testimony. Plaintiff's mother did indicate in a function report that Plaintiff was suspended for one week for the incident. Tr. 322. However, she also claimed that a previous incident only resulted in a warning, *id.*, while the educational records indicate the previous incident resulted in a three-day suspension, Tr. 416.

[2] I note that the only examiner to evaluate Plaintiff in the absence of his mother believed his depressive symptoms to be "a result of the chaotic home environment," Tr. 520, though that particular portion of the report was not expressly cited by the ALJ.

program of "academic/vocational classes" for nine months, and to complete two certificates within that program, reflects quite positively on his ability to attend and complete tasks, as the ALJ found. Tr. 24.

Next, Plaintiff contends that his teachers had believed him to have "major restrictions" in attending and completing tasks. ECF 16-1 at 20. However, Plaintiff explained in his own testimony why his performance in school did not measure up to his successful performance in Job Corps. Tr. 19 (citing Plaintiff's testimony that in high school, "he felt like he was not getting anywhere and gave up. He stated that he stopped caring about most of his classes after he found out about Job Corps."); Tr. 66 ("Because I know that I can really succeed there instead of high school"). A lack of interest and effort does not amount to a marked limitation in the domain caused by severe impairments, particularly where a claimant exhibits higher functional capacity in other contexts. Plaintiff testified that at Job Corps he does not have problems concentrating, but that he occasionally forgets where he placed personal belongings. Tr. 64-65.

Additionally, Plaintiff cites, again, the examinations from Drs. Fligsten and Davis to support findings of marked limitation in attending and completing tasks. ECF 16-1 at 20-21. As noted above, those examinations, which pre-dated Plaintiff's attendance at Job Corps, were based primarily on the information provided by Plaintiff's mother and not on Plaintiff's own reports or information from educational sources. While the evidence that Plaintiff gave up easily on the battery of testing by Dr. Davis is relevant, it does not, alone, outweigh the other evidence of record showing Plaintiff's ability to persist at tasks for prolong periods. Accordingly, I find the determination that Plaintiff had a "less than marked" limitation in attending and completing tasks to be supported by substantial evidence.

Finally, as to the adult claim, Plaintiff argues that the "ALJ's entire RFC determination discussion occurs in two short paragraphs and the determination itself was not supported with substantial evidence." ECF 16-1 at 22. Plaintiff correctly notes that the ALJ's analysis relied only on evidence pre-dating Plaintiff's eighteenth birthday, because the record is devoid of any medical evidence between Plaintiff's eighteenth birthday and the date of the opinion. The burden of proof, including the production of medical evidence, rests with the Plaintiff, and the ALJ cannot be expected to rely on evidence where none exists. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting that the burden rests with the claimant, through the first four steps of the sequential evaluation, to present evidence establishing disability during the relevant period). Moreover, there is no suggestion in the record that Plaintiff's medical condition changed in any meaningful way on or near his eighteenth birthday. Plaintiff further contends that "the ALJ also failed to explain how Plaintiff's self-paced program at Job Corps translated in the ability to engage in *competitive* employment." ECF 16-1 at 22. That argument misstates the ALJ's task, which is to consider all of the relevant evidence of record to assess Plaintiff's residual functional capacity. While this is a case in which Plaintiff can cite to isolated pieces of evidence that might support a contrary conclusion, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence

that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Here, Plaintiff's successful performance at Job Corps, over a nine-month period, was just one factor that the ALJ relied upon, among others. *See* Tr. 19 (citing minimal mental health treatment with no follow-up care); Tr. 20 (objective examination findings inconsistent with reports of aggressive behavior); Tr. 20-21 (reports of the examination of Plaintiff by Amanda Bussell, CRNP, reflecting "socially appropriate behavior," mostly "intact executive functioning," and reported "positive social interactions."); Tr. 21 (assigning "partial weight" to opinions of non-examining State agency physicians finding "less than marked" or no limitations in all domains of functioning). Finally, the ALJ had no duty to restate her earlier assessment of the opinion evidence from Dr. Fligsten and Dr. Davis in the adult RFC section, when the ALJ had provided a thorough evaluation of those opinions in the discussion of Children's SSI. Accordingly, I find no error warranting remand.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order shall issue.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge